1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS WAYNE MIZE, SR.

11              Petitioner,                    No. 2:11-cv-2007 KJM EFB P

12       vs.

13   M. CATE,

14              Respondent.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16       Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2007 judgment of

18   conviction entered against him in the Shasta County Superior Court for threatening to commit a

19   crime that would result in death or great bodily injury.  He seeks relief on the grounds that: (1)

20   his trial counsel rendered ineffective assistance, and (2) his right to due process was violated

21   when his state habeas corpus petition was decided by the same Superior Court judge who

22   presided over his trial.  Upon careful consideration of the record and the applicable law, the

23   undersigned recommends that petitioner's application for habeas corpus relief be denied.

24   ////

25   ////

26   ////

1

I.    **Background**[1]

Defendant Dennis Wayne Mize pleaded no contest to threatening to commit a crime that would result in death or great bodily injury. (Pen.Code, § 422.)[2]  He admitted three prior serious felony allegations (§ 667, subd. (a)) and a strike allegation (§§ 667, subds.(b)-(I), 1170.12).  In exchange, counts of assault by force likely to produce great bodily injury (§ 245, subd. (a)(1)) and obstructing a peace officer (§ 148, subd. (a)(1)) were dismissed, along with several enhancing allegations.  Defendant was sentenced to state prison for 19 years.  The trial court issued a certificate of probable cause.

On appeal, defendant contends his motion to dismiss for lack of venue in Shasta County was erroneously denied.  We shall affirm the judgment.

**Facts**[3]

Suzanne Rodriguez testified for the prosecution that she had an argument with defendant, her boyfriend, on an afternoon in June 2006.  She "thought it would be better that we took off and went somewhere."  They purchased gasoline, packed a blanket, a 12-pack of beer, and some tomato juice and left their residence in Redding, which is in Shasta County, and drove toward Weaverville, which is in Trinity County.  Defendant was the driver. No one else was in the car.

Shortly after leaving Redding, defendant and Rodriguez found themselves on a winding two-lane road that ascended a mountain where there were no houses, lots of trees, and very little traffic. Rodriguez and possibly defendant were drinking during the trip. Defendant got upset at Rodriguez because she had taken too long to return to the car from the gas station.  He started hitting her on the left side of her body while he drove and she sat in the passenger seat.  Her lip was injured, her nose started bleeding, and her entire left side was bruised.  Blood spilled from her face onto the paneling of the passenger door.  She asked defendant to stop the car so she could get out.

---

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2]  Hereafter, undesignated section references are to the Penal Code.

[3]  Because the matter was resolved by plea, our statement of facts is taken from the hearing on the motion to dismiss for lack of venue.

Both defendant and Rodriguez had to use the restroom, so defendant pulled off the road onto a little dirt roadway.  Rodriguez got out of the car, used the restroom, and then started to walk back to the road.  Defendant stopped her, put his hands around her neck, and started to choke her.  She fell to the ground; he kicked her and told her to get back into the car or he would kill her.  She returned to the car because she was afraid.

Defendant discontinued the trip to Weaverville.  He turned the car around and they descended back down the winding road toward Redding.  It was still light outside.  Rodriguez, who was scared, put her arms up in the air and tried to get the attention of an oncoming motorist.  A couple in an oncoming car looked right at them. Defendant immediately pulled over into a turnabout. Rodriguez got out of the car and flagged down a truck.  The truck driver assisted Rodriguez by calling an ambulance and the police. She recalled that it was dusk when she flagged down the passerby.

Around 8:35 p.m., Deputy Nelson responded to a call on Highway 299 westbound.  He arrived on the scene a few minutes later.  At the venue hearing, it was stipulated that the scene is in Shasta County, 19.4 miles from the Trinity County line, and 4.4 miles from the Shasta County courthouse.

Contrary to Rodriguez's testimony that she and defendant were alone, Kelly Bohannan testified for the defense that he and his sister, Candi Kenyon, were passengers during the trip.  Bohannan was seated behind defendant, and Kenyon was seated behind Rodriguez.

Bohannan estimated that after they left the house, they drove for 35 to 40 minutes, passed Whiskeytown Lake, and then drove another 30 to 40 miles.  He was uncertain where they were or how long they had driven because "most of the time [he] was passed out." However, he claimed that it was "good and dark" before they turned the car around.  He claimed that Rodriguez had been drinking before the trip began and continued drinking as they drove.  She was antagonistic and belligerent, and she continually bickered at defendant.  Defendant, who was driving, never struck her.

At some point during the drive, defendant stopped the car for a bathroom break.  Bohannan remembered crossing a bridge and seeing a sign that said Weaverville was six, seven, or eight miles away.  At the stop, Rodriguez got out of the car and walked out of sight.  Bohannan heard Rodriguez screaming and yelling, believed he heard her fall down a hill, and then saw her tangled up in her clothes and the surrounding bushes.  Defendant helped her back up the hill.

////

3

Bohannan saw Rodriguez stagger to the roadway and saw a truck coming in their direction.  Defendant ran over to Rodriguez and tackled her to get her out of the truck's way.  Bohannan noticed that Rodriguez was bleeding from her nose and was complaining of pain in her ribs and shoulder.  Believing Rodriguez may need medical attention, the group headed back toward Redding.

Rodriguez continued to complain that she was hurt; she asked for another beer and drank it.  Bohannan fell asleep again and did not recall anything until they got to his mother's house.  Bohannan entered the house, got something to eat, and went to sleep.

Bohannan testified that in November 2006 he was arrested and placed in the Shasta County jail.  At one point during his jail term, he and defendant were in the same pod and spent most of their days together.  Bohannan claimed that defendant did not talk about his case.

Bohannan added that he and defendant were in jail at the same time again in July 2007.  Bohannan slept most of the time and did not talk to defendant.

Bohannan's sister, Candi Kenyon, testified for the defense that she was in the car when the group took the trip to Weaverville.  She recalled that they left a little before dark, around 7:00 p.m., drove down Swasey Drive, and then went west about 30 miles on Highway 299.  During the trip, Rodriguez was argumentative, was hitting defendant, and wanted out of the car; Kenyon tried to persuade Rodriguez to desist.  Kenyon never saw defendant hit or threaten Rodriguez.

When the car stopped, Rodriguez got out of the car and ran up and down the road.  Defendant tried to get her back inside the car.  When she reentered the car, Kenyon noticed that Rodriguez's face and nose were bleeding because she had been falling down.  The group turned around and headed back toward Redding.

Rodriguez continued to hit defendant, but Kenyon did not see defendant retaliate.  After passing Whiskeytown Lake, defendant stopped and let Rodriguez out of the car and the group continued back to Redding and Kenyon's mother's house.  Kenyon left the house for a while; when she returned, law enforcement was there.

Some time thereafter, Kenyon and a defense investigator traveled westbound on Highway 299 in an attempt to locate the area in which defendant had turned the car around.  Kenyon identified an area past a bridge where a sign indicated that Weaverville was seven miles away.  The investigator testified that the sign is located in Trinity County, over 20 miles from the Shasta County line.

4

During the venue hearing, the trial court examined letters defendant had written to Rodriguez's cat, Gracie, following a court order that he have no contact with Rodriguez.  In one letter, defendant wrote that the group had pulled over "at the Weaverville ten mile sign."  In another letter, he referred to an area just past the Weaverville ten mile sign.  In yet another letter, he stated, "[a]t Swazey [sic] Drive I pulled over, took off my shirt and poured beer on her and waved [sic] her face which hurt her nose."  Defendant wrote that it was his "hope to get this domestic case dropped in Shasta County because [he] doubt[ed] that Trinity County will even pick it up."  In a final letter, defendant wrote, "[a]s long as Suzie [Rodriguez] recalls that we passed the 'Weaverville ten miles' sign, Shasta County will have to 'dismiss with prejudice,' which means the DA cannot refile it."

The trial court found by a preponderance of the evidence that at least a portion of the assaultive behavior occurred inside the car.  The finding was based upon Rodriguez's testimony and the physical evidence of blood inside the car.  The court found that the testimony of Bohannan and Kenyon was "less than fully credible."  The motion to dismiss for lack of venue was denied.

## II.    Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

1
2

            (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3       For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

4  holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

5  *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

6  (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

7  clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

8  at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

9       A state court decision is "contrary to" clearly established federal law if it applies a rule

10  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

11  precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

12  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

13  the writ if the state court identifies the correct governing legal principle from the Supreme

14  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4]

15  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

16  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

17  simply because that court concludes in its independent judgment that the relevant state-court

18  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

19  application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v.*

20  *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

21  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

22  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

23  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

24
25
26

      [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1   of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___, 131 S. Ct. 770, 786

2   (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

3   condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

4   state court's ruling on the claim being presented in federal court was so lacking in justification

5   that there was an error well understood and comprehended in existing law beyond any possibility

6   for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

7          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

8   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

9   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

10  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

11  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

12  considering de novo the constitutional issues raised.").

13         The court looks to the last reasoned state court decision as the basis for the state court

14  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

15  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

16  previous state court decision, this court may consider both decisions to ascertain the reasoning of

17  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

18  a federal claim has been presented to a state court and the state court has denied relief, it may be

19  presumed that the state court adjudicated the claim on the merits in the absence of any indication

20  or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85.  This

21  presumption may be overcome by a showing "there is reason to think some other explanation for

22  the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

23  803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

24  support its conclusion, a federal habeas court independently reviews the record to determine

25  whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

26  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

7

review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[5]

**B. Petitioner's Claims**

**1. Ineffective Assistance of Counsel/Motion to Dismiss for Lack of Venue**

In his first and second grounds for relief, petitioner claims that his trial counsel rendered ineffective assistance in connection with his handling of a defense motion to dismiss for lack of venue, which was filed and decided prior to the entry of petitioner's plea of nolo contendere. The background to these claims is the following.

On June 1, 2007, petitioner's trial counsel filed a motion to dismiss for lack of venue. Clerk's Transcript on Appeal (CT) at 217. It was petitioner's contention that venue was only proper in Trinity County. *Id.* The prosecutor filed an opposition to that motion on June 6, 2007, arguing that the evidence introduced at the preliminary hearing established that venue was proper in Shasta County. *Id.* at 227.

At the hearing before the trial court on June 11, 2007, the presiding judge stated that, after reading the "paperwork" related to the motion, his tentative ruling was to deny the motion.

////

////

---

[5] The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue. *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

Reporter's Transcript on Appeal (RT) at 70.  The judge explained that, based on the transcript of the preliminary hearing, there was "ample indication that there's venue here." *Id.*  The judge informed the parties, however, that he was willing to hear argument on the motion.  *Id.*

Petitioner's counsel objected to the use of evidence introduced at the preliminary hearing to establish venue.  *Id.* at 71.  He argued that such evidence was inadmissible hearsay.  *Id.*  The judge then noted that petitioner's counsel had not provided any evidence in support of his motion to dismiss.  *Id.*  Petitioner's counsel responded that since the burden to show proper venue rested on the prosecution, petitioner should prevail on his motion because neither side had presented any evidence.  *Id.* at 72.  Counsel explained that he had "made several attempts to get one of my witnesses here today and I have an unserved subpoena here for Ms. Kenyon." *Id.*  He stated that if the prosecution had been prepared to proceed with an evidentiary hearing on the motion immediately, he would "ask for a continuance based on that unserved subpoena." *Id.*  Counsel further requested that "if the court intends to deny my motion, at the – at the very least, I would ask the opportunity to – for it not to be with prejudice and that I can bring it in trial for the motion in limine for a full evidentiary hearing." *Id.* at 72-73.  After hearing argument from the prosecutor, the presiding judge modified his earlier expressed tentative ruling on the motion to dismiss, as follows:

> THE COURT: Why don't I do this.  Here's a new – a new and improved, perhaps, tentative ruling.  I'm going to deny your motion without prejudice to be presented in limine without any more filings, unless you have something more you want to file.

*Id.* at 73-74.

On August 21, 2007, petitioner's motion to dismiss for lack of venue was heard in the trial court before the trial judge.  *Id.* at 85.  The prosecutor introduced the preliminary hearing and direct testimony of victim Suzanne Rodriguez, and letters written by petitioner to Rodriguez's cat, Gracie.  *Id.* at 85, 94-95, 99-112.  Petitioner's counsel presented the testimony of Kelly Bohannan, Candi Kenyon, and Chester Ashmun in support of his motion.  *Id.* at 123,

147, 161.  After hearing the evidence and arguments of counsel, the trial court denied

petitioner's motion for change of venue, ruling as follows:

> Remembering that the burden of proof on this issue is not proof
> beyond a reasonable doubt, so I'm coming to no conclusions about
> the guilt or innocence of Mr. Mize with regards to the alleged
> assault or criminal threat, but I do conclude that by a
> preponderance of the evidence, the greater weight of evidence, that
> at least a portion of the assaultive behavior occurred in the vehicle.
> I think the testimony of Miss Rodriguez is consistent with that; the
> physical evidence, the placement of the blood inside the vehicle, is
> consistent with that.  I find the testimony of Miss Kenyon and Mr.
> Bohannan to be less than fully credible.  And to the extent that it –
> if this testimony disagrees with the physical evidence and the
> testimony of Miss Rodriguez, I find greater support from Miss
> Rodriguez's testimony.
>
> So by a preponderance, this motion is denied.  So, the case is going
> to be tried here.

*Id.* at 169.

In claim one contained in the instant petition, petitioner argues that his trial counsel

improperly failed to call witnesses, especially Candi Kenyon, or present any other evidence,

including a tape recorded interview with the victim, at the June 11, 2007 hearing on his motion

for change of venue.  Dckt. 1 (hereinafter Pet.) at 11-24.  He argues that his counsel was

unprepared "for the motion hearing at all, as he filed the motion and did not follow up with any

subpoenas or anything."  *Id.* at 16.  In the traverse, petitioner argues that his trial counsel

improperly "said that he had attempted to serve witnesses with subpoenas when he in fact did

not."  Dckt. 21 at 9.  Petitioner concedes that defense witnesses were called at the August 21,

2007 hearing on the motion to dismiss.  However, he appears to be claiming that if his trial

counsel had presented his witnesses at the first hearing on June 11, he would have prevailed on

the motion because the prosecutor was unprepared to present evidence at that time and would not

have been able to rebut evidence in support of the motion.  Pet. at 18.  In the traverse, petitioner

argues that his trial counsel rendered ineffective assistance in "ask[ing] for a continuance after

the judge balked at making a ruling on the motion."  Dckt. 21 at 9.  He states, "it was not

10

1   [counsel's] duty to ask for a continuance to allow the prosecution time to prepare Rodriguez's

2   story . . . ." *Id.*

3         Petitioner contends that the continuance of the motion hearing unfairly allowed the

4   prosecutor to obtain evidence in support of his opposition to the motion.  Pet. at 18.  He argues

5   that, although "there was eventually enough evidence" at the subsequent hearing on the motion

6   to demonstrate venue in Shasta County, there is a reasonable probability that the motion would

7   have been granted by the original presiding judge on June 11, 2007 had his trial counsel been

8   prepared to introduce the testimony of witnesses and other evidence at that time.  *Id.* at 23.

9   Petitioner argues that he suffered prejudice from the actions of his trial counsel because there is

10   no evidence Trinity County would have pursued his case if it had been transferred there.  *Id.* at

11   21, 23.

12         Finally, petitioner argues that his trial counsel rendered ineffective assistance in failing to

13   file a writ of mandate following the trial court's June 11, 2007 tentative ruling denying the

14   motion to dismiss.  *Id.* at 12, 14, 18, 21-22.  He states that he was "further prejudiced because the

15   failed motion and counsel's failure to bring it up in an extraordinary writ cause [sic] petitioner to

16   waive his rights to trial in order to retain his right to Direct Appeal of the venue issue."  *Id.* at 23.

17   Petitioner summarizes his arguments in claim one as follows:

18           There can be no tacticle [sic] decision or choice in not presenting
        evidence in support of a motion to dismiss when you have that
19           evidence at hand and the judge issued a tentative ruling
        denyingdenying [sic] your motion because you've not presented
20           any evidence.

21           There can, further, be no tacticle [sic] choice for not presenting the
        denial of that motion to an appellate court for review if he was, in
22           fact in the right about it being the People's burden to prove venue.

23           If counsel had presented any evidence in support of his motion, it
        would have been granted by the sheer prepoderance [sic] of that
24           evidence, assuming, arguendo, that the motion was still denied,
        even after presenting evidence that showed that the crimes
25           occurred in another county, out of the vehicle, while stopped to
        pee on the side of the road, the petitioner's counsel still would
26           have had meritorious grounds for granting a Petition for Writ of

1            Mandate and therefore should have filed one.

2            Prejudice is plain here because the failed motion to dismiss is the
           reason why the petitioner pled guilty and got 19 years in prison.

3

4            Had counsel acted reasonably under prevailing professional norms,
           then there is beyond a doubt a reasonable probability that a more
           favorable outcome would have been reached given the fact that he

5            acted reasonably, as outlined, then the motion would have been
           granted, and that was the goal of this motion to dismiss for lack of

6            venue.

7 *Id.* at 15-16.

8       In claim two of the instant petition, petitioner argues that his trial counsel rendered

9 ineffective assistance in failing to effectively impeach victim Rodriguez at the August 21, 2007

10 hearing on his motion to dismiss for lack of venue.  *Id.* at 26-34.  Petitioner contends that

11 Rodriguez's prior recorded statement to police contradicted her testimony at the hearing on the

12 motion to dismiss and corroborated the testimony of the defense witnesses with regard to the

13 county in which the assault and threats took place.  *Id.*  Petitioner faults his trial counsel for

14 failing to impeach Rodriguez with her statements during the taped interview.  *Id.*

15       Petitioner also argues that his trial counsel was ineffective in failing to obtain other

16 witnesses and evidence to support his arguments at the hearing on the motion to dismiss,

17 including nurses at the medical center where Rodriguez was taken and evidence concerning a

18 "Sweet Deal" offered to Rodriguez by the prosecutor in exchange for her testimony that the

19 assault and threats took place in Shasta County.  *Id.* at 27.  Petitioner argues that his trial counsel

20 failed to demonstrate that Rodriguez was "lying" when she testified as to where the alleged

21 abuse took place.  *Id.* at 28-32.  He argues that he suffered prejudice from counsel's ineffective

22 performance because "simply put, without Rodriguez's testimony the judge would have had to

23 have granted the motion to dismiss for lack of venue."  *Id.* at 32.  In the traverse, petitioner

24 claims that he was "deprived of his constitutional right to effective assistance of counsel by

25 counsel totally giving up on the case and not preparing for trial."  Dckt. No. 21 at 2.

26 ////

1    All of the instances of ineffective assistance of trial counsel alleged by petitioner in

2    claims one and two, described above, are concerned with counsel's prosecution of the motion to

3    dismiss and occurred prior to the entry of petitioner's plea of nolo contendere.  These claims are

4    not directly related to counsel's advice regarding whether to accept the plea offer.  The law is

5    clear that petitioner may not raise claims of deprivation of his constitutional rights that occurred

6    prior to his plea.  To the extent that a petitioner seeks to claim that he received ineffective

7    assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based

8    upon that advice as it related to the decision to enter his guilty plea.  Any ineffective assistance

9    claims relating to other, earlier actions by his counsel are barred by the holding in *Tollett v.*

10   *Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in

11   open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

12   raise independent claims relating to the deprivation of constitutional rights that occurred prior to

13   the entry of the guilty plea").  *See also McMann v. Richardson*, 397 U.S. 759, 770-71 (1970);

14   *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea

15   precludes him from challenging alleged constitutional violations that occurred prior to the entry

16   of that plea"); *Hudson v. Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and

17   intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-

18   plea constitutional violations).  *See also Givens v. Sisto*, No. C 08-05231 JW (PR), 2010 WL

19   1875766 (N.D. Cal. May 7, 2010) ("the only challenges left open in federal habeas corpus after a

20   guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of

21   counsel to plead.").  Because the instances of ineffective assistance of trial counsel alleged by

22   petitioner in claims one and two occurred prior to the entry of his plea of nolo contendere,

23   petitioner may not pursue these claims in this federal habeas proceeding.  *Tollett*, 411 U.S. 258.[6]

24   _____

25   [6] Even if these claims were not barred, petitioner has failed to demonstrate prejudice.
     There is no significant evidence in the record that petitioner would have prevailed on his motion
26   to dismiss even if his trial counsel had presented the evidence that petitioner suggests he should

## 2. Ineffective Assistance of Counsel/Advice to Plead Guilty

In ground three, petitioner claims that his plea of nolo contendere was involuntary because his trial counsel falsely told him he had to plead guilty in order to be able to contest the trial court's finding that venue was proper in Shasta County. Pet. at 36-38. According to petitioner, his trial counsel told him that "if the case went to trial then there would be no appeal on the venue issue" and that "the venue issue could not be revisited at trial." *Id.* at 36. Petitioner states that he "now knows that the venue issue could have been tried to the jury." *Id.* Petitioner claims that, after receiving this advice from counsel, he decided to enter a plea in order to "preserve the venue issue for appeal." *Id.* at 36, 47. Petitioner also states that he "would have taken the case to trial had he been properly advised about the prosecution's burden of proving venue by a preponderance of the evidence to a jury." *Id.* at 37.

Petitioner also claims that his trial counsel "assured petitioner that the venue issue would be overturned on appeal and that petitioner could be tried in Trinity County." *Id.* He claims that he "pled guilty because [his trial counsel] told him that his case would get overturned on appeal by the appellate court." *Id.* He states, "had counsel properly advised the petitioner about his options and not wrongly told him to that [sic] he had to plead guilty in order to have his case overturned on appeal, the petitioner would have taken his case to trial." *Id.* Petitioner has attached his own declaration in support of this claim, in which he essentially repeats the allegations set forth above. *Id.* at 47-50. In essence, petitioner is attacking the voluntary and intelligent character of his guilty plea by alleging that the advice he received from his counsel during the plea negotiation process was inadequate.

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). After a petitioner

have presented, at either of the hearings on the motion.

identifies the acts or omissions that are alleged not to have been the result of reasonable

professional judgment, the court must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance.

*Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  The relevant question under AEDPA "is

not whether counsel's actions were reasonable, but whether there is any reasonable argument

that counsel satisfied *Strickland*'s deferential standard.  *Richter*, 131 S. Ct. at 778 -779.  When

evaluating counsel's performance under the first step of *Strickland*, federal courts must apply a

strong presumption that counsel "rendered adequate assistance and made all significant decisions

in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

The United States Supreme court has recently confirmed that the Sixth Amendment right

to counsel "extends to the plea-bargaining process."  *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct.

1376, 1384 (2012).  To prevail on such a claim, a petitioner must show that:  (1) counsel's

representation fell below the range of competence demanded of attorneys in criminal cases, and

(2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  A

petitioner must also demonstrate "'gross error on the part of counsel,'" *Turner v. Calderon*, 281

F.3d 851, 880 (9th Cir. 2002) (quoting *McMann*, 397 U.S. at 772), and that the advice he

received from his counsel was "so incorrect and so insufficient that it undermined his ability to

make an intelligent decision about whether to accept the [plea] offer.'" *Id.* (quoting *United States*

*v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992)).

Petitioner has made self-serving, unsupported, and somewhat confusing allegations in his

petition regarding the advice that his trial counsel purportedly gave him about his options for

appealing the trial court's ruling on his motion to dismiss for lack of venue.  These allegations

are insufficient to establish that trial counsel rendered ineffective assistance.  "Self-serving

statements by a defendant that his conviction was constitutionally infirm are insufficient to

overcome the presumption of regularity accorded state convictions." *Turner*, 281 F.3d at 881

1   (citations omitted).  Several circuit courts have concluded that a habeas petitioner must show

2   some objective evidence other than his unsupported assertions to establish that he suffered

3   prejudice in this context.  *See Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing

4   *United States v. Gordon*, 145 F.3d 376, 379-80 (2d Cir. 1998)); *Toro v. Fairman*, 940 F.2d 1065,

5   1068 (7th Cir. 1991) (requiring further "objective evidence" that a petitioner would have

6   accepted a plea offer); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (petitioner's

7   "after the fact testimony concerning his desire to plead, without more, is insufficient to establish

8   that but for counsel's alleged advice or inaction, he would have accepted the plea offer).

9       The record before the court belies petitioner's assertion that he would have proceeded to

10   trial if he had been correctly advised about the procedure for appealing the trial court's ruling on

11   his venue motion.  Under the circumstances presented here, it is not plausible that concern about

12   the venue of his trial would have caused petitioner to pass up a favorable plea offer.  First, even

13   if petitioner were somehow able to prevail at trial on a challenge to the trial court's ruling on his

14   motion to dismiss for lack of venue, he would simply be retried on the same charges in Trinity

15   County.  Petitioner's assertion that Trinity County would be uninterested in pursuing his case,

16   and would simply let it drop, is completely speculative and is not supported by anything in the

17   record.  In addition, the court notes petitioner's assertion that his trial counsel rendered

18   ineffective assistance when he assured petitioner that he would prevail on his appeal of the venue

19   issue and "could be tried in Trinity County."  Pet. at 37.  This allegation contradicts petitioner's

20   assertion that he believed he would not be retried in Trinity County if venue was found to be

21   improper in Shasta County.  In light of the above, petitioner has failed to demonstrate that there

22   is a reasonable probability he would have rejected a reasonable plea offer and insisted on going

23   to trial if he had been correctly advised that he could raise the venue issue again at trial.[7]

24   ////

25   ────────────────────────

26       [7]  The court also notes that petitioner has not cited any authority for his vague assertion
   that "the venue issue could have been tried to the jury."

16

1    Further, the state court record reflects that petitioner had an extensive criminal

2 background and was facing a lengthy sentence if he were convicted after a trial.  RT at 191.

3 Indeed, the sentence imposed on petitioner in the instant case runs consecutively to another

4 sentence of twenty-six years to life that he was already serving at the time of his conviction in

5 this case.  *Id.* at 191, 195.  As a result of his plea, petitioner received a determinate sentence of

6 only nineteen years in prison, despite admitting that he had one prior strike and three prior

7 serious felony convictions.  *Id.* at 191.  On the other hand, had petitioner chosen to go to trial the

8 evidence against him was substantial, even overwhelming.  Further, there was little likelihood

9 petitioner would have prevailed in the trial court on a motion to dismiss for lack of venue, given

10 the substantial evidence introduced at the hearing on petitioner's pretrial motion to dismiss

11 which supported the trial judge's finding that venue was appropriate in Shasta County.  In light

12 of these circumstances, petitioner's self-serving statement that he would have risked a much

13 larger sentence on the unlikely chance that he would prevail on a venue argument he had already

14 raised and lost is not sufficient to establish that he suffered prejudice from his counsel's

15 allegedly incorrect advice.  In short, petitioner has failed to show that "the outcome of the plea

16 process would have been different with competent advice."  *Lafler*, 132 S.Ct. at 1384.

17    Petitioner has also failed to demonstrate that his trial counsel's advice during the plea

18 negotiation process was deficient.  There is no dispute that petitioner's trial counsel correctly

19 advised him about the plea offer and its terms, as well as the sentence he faced if he proceeded to

20 trial.  The plea colloquy confirms that petitioner was so advised.  RT at 191-203.  There is also

21 no dispute that petitioner knowingly and voluntarily waived his constitutional rights in foregoing

22 his right to a trial on the charges against him.  *Id.*  In addition, petitioner stated at the change of

23 plea hearing that no promises had been made to him other than those contained on the change of

24 plea form.  *Id.* at 195.  This statement in open court casts doubt on petitioner's assertion that his

25 trial counsel promised him he would prevail on "the venue issue" on appeal and that his case

26 would "get overturned on appeal by the appellate court."  In short, petitioner has failed to

1   demonstrate that his trial counsel committed "gross error" in connection with the plea process or

2   that the advice he received from his counsel was "so incorrect and so insufficient that it

3   undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'"

4   *Turner*, 281 F.3d at 880.   Petitioner has also failed to overcome the strong presumption that his

5   trial counsel's advice fell within the "wide range" of professional assistance.

6       To the extent petitioner is arguing his trial counsel overestimated the chances of success

7   on an appeal of the denial of his motion to dismiss, his claim lacks merit and should be denied.

8   A "mere inaccurate prediction, standing alone, would not constitute ineffective assistance." *Iaea*

9   *v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

10      For all of these reasons, petitioner has failed to demonstrate that the California Supreme

11  Court's ruling rejecting this ineffective assistance of counsel claim is based on an unreasonable

12  application of *Strickland*.   Accordingly, petitioner is not entitled to federal habeas relief.

13                      **3. Due Process Violation**

14      In his final ground for relief, petitioner claims that the California Superior Court's

15  "practice" of "assigning habeas corpus petition [sic], challenging a ruling or order, to the same

16  judge who made the original ruling is improper, prohibited by statute, and denied the petitioner

17  his right to impartial and fair review of his habeas claims." Pet. at 40.  Petitioner explains that

18  the judge who denied his motion to dismiss for lack of venue was the same judge who ruled on

19  his habeas petition filed in the California Superior Court, in which he challenged the ruling on

20  the motion to dismiss.  *Id.*  Petitioner argues that this situation violated state law and his federal

21  right to due process.

22      The state court record reflects that Judge Bradley L. Boeckman presided over petitioner's

23  trial proceedings on August 21, 2007, when the motion to dismiss for lack of venue was denied.

24  Judge Boeckman was also the judge who denied petitioner's subsequent habeas petition filed in

25  the Shasta County Superior Court.  CT at 252; Resp.'s Lodg. Doc. 8.  In that habeas petition,

26  petitioner raised three claims, arguing that his trial counsel rendered ineffective assistance in

1   connection with his advice to petitioner to enter a plea and in his prosecution of the defense

2   motion to dismiss for lack of venue.  In his ruling on the habeas petition, Judge Boeckman

3   erroneously stated that petitioner was challenging "an issue (improper venue) that was raised on

4   appeal."  Resp.'s Lodg. Doc. 8.  In fact, petitioner's claims did not constitute a direct challenge

5   to Judge Boeckman's ruling on the motion to dismiss.  Petitioner asserts that "although none of

6   the grounds before the Superior Court were appeals of orders or rulings by Judge Boeckman in

7   actuality, Judge Boeckman believed they were as cand [sic] be evidenced by [the denial of the

8   habeas petition]."  Pet. at 41.  Petitioner concludes, "the fact that [Judge Boeckman] believed he

9   was reviewing his own ruling or order is enough to cast a shadow of impropriety upon his entire

10   ruling . . . ."  *Id.*  Petitioner requests that this court "remand this petition to the Superior Court

11   with instructions that it be assigned to a different judge for consideration of the grounds stated

12   within."  *Id.* at 42.

13        Petitioner has failed to demonstrate that the denial of his habeas petition by Judge

14   Boeckman violated any of his federal constitutional rights.  As noted above, the federal writ is

15   not available for alleged error in the application of state law, and habeas corpus cannot be

16   utilized in federal court to try state issues *de novo*.  *Milton v. Wainwright*, 407 U.S. 371, 377

17   (1972).  *See also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly

18   held that 'it is not the province of a federal habeas court to reexamine state-court determinations

19   on state-law questions.");  *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state

20   law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982)

21   and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991));  *Bradshaw v. Richey*, 546 U.S. 74, 76

22   (2005) "a state court's interpretation of state law . . . binds a federal court sitting in federal

23   habeas").  Whether or not Judge Boeckman violated state law in ruling on petitioner's state

24   habeas petition, or whether the judge should have recused himself from deciding petitioner's

25   state habeas petition, are questions of state law which are not cognizable in the instant federal

26   habeas petition.

1    Petitioner has not cited any federal authority prohibiting a state court judge from ruling

2    on a petition for writ of habeas corpus where that judge presided over the matters that are the

3    subject of the petition.  For this reason, petitioner has failed to demonstrate that the decision of

4    the California Supreme Court rejecting this due process claim is contrary to or an unreasonable

5    application of United States Supreme Court authority, as required by AEDPA.  As stated by one

6    district court:

7        Petitioner does not cite and this court is unable to find any
         Supreme Court authority prohibiting a state court judge from
8        considering a habeas petition when that judge presided over the
         trial that is the subject of the petition.  To the contrary, the court
9        notes that in the federal equivalent to this situation, Rule 4(a) of
         the Federal Rules Governing § 2255 Habeas Proceedings directs
10       that a habeas petition "be presented promptly to the judge of the
         district court who presided at the movant's trial and sentenced him
11       . . . ." (footnote omitted.)  Therefore, it cannot be said, under
         AEDPA, that there is clearly established Supreme Court precedent
12       addressing this issue, and as such, this court must defer to the state
         court's decision.

13

14   *Moore v. Clark*, No. 2:07-cv-423 BJR, 2010 WL 3125979, *13 (E.D. Cal. Aug. 6, 2010).

15   *Cf. Clemmons v. Wolfe*, 377 F.3d 322, 329 (3rd Cir. 2004) (Third Circuit exercised its

16   supervisory power to require that federal district judges recuse themselves from participating in a

17   28 U.S.C. § 2254 habeas petition where the petitioner raises an issue concerning the trial or

18   conviction over which that judge presided in his/her former capacity as a state court judge).

19       The court also notes that after Judge Boeckman denied the claims contained in

20   petitioner's state habeas petition, petitioner raised the same claims again in a petition for writ of

21   habeas corpus filed in the California Supreme Court.  "State habeas petitions in California are

22   presented to the state supreme court as original petitions, rather than as requests for review of

23   lower-court rulings denying relief; accordingly, the Supreme Court of California must actually

24   adjudicate each habeas petition."  *Williams v. Cavazos*, 646 F.3d 626, 634-35 (9th Cir. 2011).

25   Summary denials of original petitions for habeas corpus filed in the California Supreme Court

26   should "be presumed" to be "adjudicated . . . on the merits."  *Richter*, 131 S.Ct. 174-75.  In other

1   words, petitioner's ineffective assistance of counsel claims were exhausted in state court through

2   a habeas petition filed in the California Supreme Court, which was denied on the merits by

3   judges other than Judge Boeckman. Under these circumstances, petitioner cannot demonstrate

4   that his state habeas proceedings were rendered fundamentally unfair simply because the judge

5   who presided over his trial ruled on the habeas petition he filed in the Superior Court.

6          For all of these reasons, petitioner is not entitled to relief on this due process claim.

7   **C. Request for Evidentiary Hearing**

8          Petitioner requests an evidentiary hearing on the claims raised in the instant federal

9   habeas petition. Dckt. 21 at 3.

10         Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

11  following circumstances:

12              (e)(2) If the applicant has failed to develop the factual basis of a
                claim in State court proceedings, the court shall not hold an
13              evidentiary hearing on the claim unless the applicant shows that-

14                  (A) the claim relies on-

15                  (I) a new rule of constitutional law, made retroactive to cases on
                    collateral review by the Supreme Court, that was previously
16                  unavailable; or

17                  (ii) a factual predicate that could not have been previously
                    discovered through the exercise of due diligence; and
18
19                  (B) the facts underlying the claim would be sufficient to establish
                    by clear and convincing evidence that but for constitutional error,
                    no reasonable fact finder would have found the applicant guilty of
20                  the underlying offense[.]

21         Under this statutory scheme, a district court presented with a request for an evidentiary

22  hearing must first determine whether a factual basis exists in the record to support a petitioner's

23  claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*,

24  187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

25  2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting

26  an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

*Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).[8]

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition.  The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief.  Further, petitioner has not identified any factual conflict that would require this court to hold an evidentiary hearing in order to resolve.  Therefore, petitioner's request for an evidentiary hearing should be denied.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

---

[8]  The Supreme Court has recently held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. *Pinholster*, 131 S. Ct. at 1398.

1   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

2   enters a final order adverse to the applicant).

3   DATED:  March 28, 2013.

4

5   EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26